2009 BNH 031
_____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:                                                                                          Bk. No. 05-12854-MWV
                                                                                                       Chapter 7
Sherri Rosanna Poliquin,
                Debtor

*Kenneth E. Churbuck, Esq.*
*Attorney for Sherri Rosanna Poliquin*

*Deborah A. Notinger, Esq.*
*DONCHESS, NOTINGER & TAMPOSI, PC*
*Attorney for Steven M. Notinger, Chapter 7 Trustee*

## MEMORANDUM OPINION

The Court has before it the issue of whether Sherri Rosanna Poliquin (the "Debtor") should be permitted to amend her schedules to list a previously omitted interest in property and claim a homestead exemption. The debtor filed amendments to Schedules A and C, and the Chapter 7 trustee filed objections thereto (Ct. Doc. No. 35). The Court held a hearing on the matter on October 5, 2009. At the end of the hearing, the Court ordered the parties to submit additional memoranda on or before October 19, 2009, at which time the Court took the matter under advisement.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### BACKGROUND

The Debtor filed her Chapter 7 petition along with her schedules and statement of financial affairs on July 21, 2005. On the petition, the Debtor indicated her current address as 31 Souhegan Drive, Merrimack, New Hampshire (the "subject property"). At the time of filing, the Debtor's Schedule A did not list any ownership interest in the subject property, Schedule B indicated "none" as to equitable or future interests,

and Schedule C did not list a claimed homestead exemption.  Additionally, the Debtor's statement of financial affairs indicated an amount of $24,000 received in conjunction with the sale of the Debtor's home at 17 Friar Tuck Court, Merrimack, New Hampshire (the "Friar Tuck property").  At the Debtor's 341 meeting held on August 22, 2005, the Debtor indicated on the record that she was temporarily staying at the subject property with her mother.  Further, the Debtor stated she had been making payments to her mother of $300 per month for rent.  When asked if the Debtor currently owned any real estate, the Debtor responded in the negative.  On August 25, 2005, the Trustee filed his report of no distribution.  The Debtor was discharged on December 9, 2005, and the case was closed on February 10, 2006.

In October 2007, the Debtor commenced an action against her mother and brother in the Hillsborough County Superior Court (the "state court action") requesting the court to impose a constructive trust on the subject property for one-fourth of the value.  The Debtor's state court action alleged that she and her brother were the beneficiaries of an irrevocable trust (the "Trust") created by the Debtor's father in 1986.  The state court action also alleged that the Debtor's father conveyed his half interest in the subject property to the Trust, and the Trust was to sell the half interest by a date certain and provide half of the sale proceeds to the Debtor, but instead in contravention of the Trust, the trustee conveyed the Trust interest to the Debtor's mother in 2007 for no consideration.  In the state court action, the Debtor's pleadings stated that while the Debtor was a minor, "she became aware in general terms of the existence of the trust and understood that she had some beneficial interest via the trust in the subject real estate."  (Ct. Doc. No. 42, Ex. C).  Moreover, the pleadings stated that when the Debtor moved into her mother's home in 2005, the Debtor formed an oral agreement with her mother to provide the sale proceeds from the Friar Tuck property and $300 per month for the purpose of improving the subject property and to financially assist the Debtor's mother.  In exchange, the Debtor understood that upon her mother's death, the subject property would be sold and the Debtor would be repaid her investment with the remaining equity to be divided between the Debtor and the Debtor's brother.

In March 2009, the Debtor filed a motion to enforce a $75,000 settlement in the state court action,

but the Debtor's mother requested that the state court action be dismissed since the Debtor did not list any interest in the Trust or the subject property in the Debtor's bankruptcy petition. The state court stayed the action pending this Court's resolution of the issues. Subsequently, in June 2009, the Debtor filed a motion to reopen her case in order to amend her schedules. This Court granted the Debtor's motion to reopen, and on July 6, 2009, the Debtor filed amendments to Schedules A and C indicating a remainder estate fee simple interest in the subject property and exempting the full value of the Debtor interest in the subject property pursuant to New Hampshire's homestead exemption. N.H. Rev. Stat. Ann. § 480:1. The Debtor filed the amendments stating she only became aware of her equitable interest in the Trust and subject property in 2007. The Debtor now alleges she is entitled to claim the homestead exemption in the subject property. The trustee not only objects to the Debtor's amendments but to the exemption in general.

## DISCUSSION

Federal Rule of Bankruptcy Procedure 1009(a) provides that schedules "may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). However, Rule 1009(a) does not specify the standard for amendments after the case is closed. The appropriate standard to be applied when the case is closed is provided in Rule 9006(b)(1). Rule 9006(b)(1) states that "when an act is required or allowed to be done at or within a specified period by these rules . . . the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). In the present case, the Court finds no prejudice in allowing the Debtor to amend her schedules. As such, the Debtor is permitted to amend her schedules to list interests she believes she has in the subject property.

However, the Court has serious concerns as to the Debtor's credibility, good faith, and the potential effects of allowing her to claim a homestead exemption in the subject property. Section 522 permits a debtor to exempt property from the bankruptcy estate that the trustee would otherwise have available to distribute to creditors. See 11 U.S.C. § 522. Therefore, if a Debtor succeeds in claiming an exemption, the debtor retains

the exempted property and it is no longer available to the estate. "Debtors have an absolute duty to report whatever interest they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate. Generally, if a debtor intentionally conceals or fails to disclose estate property, the debtor will be barred from claiming such property as exempt, even if the property would have been exempt had it been properly scheduled and claimed." Wood v. Premier Capital, Inc. (In re Wood), 291 B.R. 219, 226 (B.A.P. 1st Cir. 2003) (internal citations omitted). Courts must probe all circumstances surrounding the debtor's case to determine whether bad faith exists. See id.

Here, the Debtor waited almost four years after receiving her discharge to amend her schedules and claim a homestead exemption. The Debtor claims that at the time of filing her bankruptcy petition, she was unaware of any equitable interest in the subject property, and that the trust was concealed from her during her entire life. In fact, the Debtor alleges that it was only in 2007 that she became aware of the trust and that she had an interest in the subject property. However, the Debtor's pleadings in her state court action indicate otherwise. There, she avers that it was during her minority that she became aware of the Trust and knew that she had some interest in the subject property. The inconsistencies do not end there. At her 341 meeting, the Debtor stated she was only staying with her mother temporarily and had been tendering rent. Now, the Debtor wishes the Court to accept the proposition that it was always her intention to make the subject property her homestead. In support of this proposition, the Debtor states that she had an oral agreement with her mother where the Debtor provided $24,000 from the sale of her Friar Tuck property towards improvements of the subject property, and the "rental payments" were actually given to her mother to help with the mother's financial difficulty. These details were concealed from the trustee at the time of the 341 meeting, and were only raised for the first time in 2007 when the Debtor instituted her state court action.

Even if the Court were to believe that the Debtor only became aware of her interests in the subject property in 2007, the Debtor still failed to amend her schedules until two years later, in June 2009. The Court has reason to believe the Debtor only ever moved to amend her schedules and claim a homestead exemption because of defenses raised by the Debtor's mother in the state court action and not because the

-4-

debtor was unaware of her property interests.  The Court concludes that the Debtor's claim of exemption comes unreasonably late and is filed in "bad faith."  Allowing the exemption would extremely prejudice the trustee.  In addition to interfering with the proper administration of the estate, the Debtor's new allegations provide reason to believe that the trustee might have had a fraudulent transfer claim against the Debtor's mother.  The purpose of bankruptcy is to "relieve the honest debtor from the weight of oppressive indebtedness and permit [her] to start afresh."  Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 501 (1st Cir. 1997).  The Debtor, here, is not honest and instead is attempting to make a mockery of the kind of debtor envisioned by the Bankruptcy Code as deserving of the benefits provided by the bankruptcy process.  This Court will not allow such an injustice to occur.  Accordingly, the claim of homestead exemption is disallowed.

## CONCLUSION

The Court allows the Debtor to amend her schedules, but sustains the Chapter 7 trustee's objection to the Debtor's claimed homestead exemption.  The Debtor's homestead exemption is disallowed.  The automatic stay is lifted to allow the state court to complete litigation on the enforcement of the settlement agreement.  To the extent that the state court finds the Debtor is entitled to the $75,000 settlement, that settlement will become property of the Debtor's bankruptcy estate.  This opinion constitutes the Court's finding and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

DONE and ORDERED this 2nd day of December, 2009, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge